MARTIN COUNTY COAL
CORPORATION,
Appellant,

v.

Billy HAMMOND; Denis S. Kline, Administrative Law Judge; And Workers' Compensation Board, Appellees.

No. 1998–CA–000324–WC.

Court of Appeals of Kentucky.

Oct. 16, 1998.

Natalie D. Brown, Lexington, for Appellant.

J. Drew Anderson, Prestonsburg, for Billy Hammond.

Before COMBS, MILLER, and SCHRODER, JJ.

### OPINION

SCHRODER, Judge.

In this petition for review of a decision of the Workers' Compensation Board (Board), Martin County Coal Corporation (Martin County) argues that the 1996 amendment to KRS 342.732(1)(a) is remedial legislation which precludes an award of benefits to Billy Hammond (Hammond) and, in the alternative, that because Hammond's exit from the coal mining industry was due to his own fault, he is not entitled to collect any retraining incentive benefits (RIB). Finding no error in the Board's decision, we affirm.

On September 26, 1995, Hammond was fired from Martin County for allegedly using company gasoline in his own truck. He filed his RIB claim on December 1, 1995, and on July 30, 1996, the Administrative Law Judge (ALJ) found that he suffered from category one pneumoconiosis. He dismissed the claim, however, for the following reason:

> The Plaintiff is entitled to recover Retraining Incentive Benefits in cash from his employer only when he is out of the mining industry "through no fault of his own." Mr. Hammond is currently no longer employed in the mining industry through his own fault. He was discharged for taking company property for his own use, and it appears that the company was justified in discharging him.

The Board, finding that the "through no fault of his own" language of KRS 342.732(1)(a) refers only to miners who continued to work in the coal mining industry at the time the award is made and then either (1) leave the industry or (2) enter a bona fide training or education program and then leave the industry, reversed. We agree that the Board's interpretation of the statute is correct.

The applicable version of KRS 342.732(1)(a) states in relevant part:

> These benefits may be paid directly to the employee only if the employee is not working in the mining industry in the severance and processing of coal ..., in which event the one (1) time only retraining incentive benefit awarded under this paragraph may be collected semimonthly as provided in KRS 342.040. While the employee is working in the mining industry in the severance and processing of coal ..., and if the employee is enrolled and actively participating in a bona fide training or education program ..., benefits awarded under this paragraph shall be paid directly to the institution conducting the training or education program on a semimonthly basis. The benefit shall not be paid for a period in which the employee ceases to participate in the program. In no event shall the benefit be paid to the employee while the employee is working in the mining industry in the severance and processing of coal ..., nor shall the employee personally receive any benefits pursuant to this award other than for traveling expenses.

We agree with the Board that the statute distinguishes between miners who are working in the mining industry at the time of the award and those who have left the industry by the time of the award. The latter are entitled to direct payment of their RIBs, regardless of their reason for leaving the industry. The former are entitled to direct payment only if a portion of the award remains after they have completed their retraining program and leave the industry, *through no fault of their own,* or they leave the industry, *through no fault of their own,* without undergoing retraining. This interpretation that the last sentence of the subsection (1)—the only reference to fault—relates only to miners still in the industry at the time of the award is supported by the words "remaining benefits." There can only be "remaining benefits" if some of the bene-

fits have already been used or have expired. These scenarios only occur when the miner is still in the industry at the time of the award.

Because Hammond was no longer working in the severance and processing of coal at the time of his award, the reason for his having left is irrelevant. While this outcome seems to reward his illegal activity, we are constrained to interpret the legislation as it is plainly written. We are also reminded that it is always more profitable to work than to receive a form of workers' compensation benefits. Furthermore, as the Board said:

> Certainly, prior to the rendition of an actual award in a claim, the injured worker has no certainty that he will receive benefits. If an individual were allowed to continue to work until that point in time at which he received an award, then there would be no "risk" in pursuing a RIB claim. Under those circumstances, one could logically presume that the individual left work solely because he had been awarded RIB. If an individual is no longer in the mining industry at the time of the award, that motivation does not exist. Therefore, there is a logical, rational, and reasonable basis for the differing standard for the award of benefits to the employee.

■ Appellant also argues that the 1996 amendment to KRS 342.732(1)(a) [1], is remedial and precludes an award of any benefits to Hammond. The contention is not well taken. The ALJ issued his Opinion and Order on July 30, 1996. The amendment to KRS 342.732(1)(a) did not become effective until December 12, 1996. Even remedial changes in the law which do not become effective until after an ALJ has reached a decision on a claim cannot be a proper basis for determining that the decision was erroneous. Therefore, regardless of whether the 1996 amendment is remedial, it does not apply to this claim because the claim had already been decided by the ALJ, and thus was no longer pending, on the effective date of the amendment.

Accordingly, the decision of the Workers' Compensation Board is affirmed, and the claim is remanded to the ALJ to instate Hammond's RIB award.

All concur.

---

1. This amendment limits retraining incentive benefits to an employee who is "enrolled and actively and successfully participating as a full-time student taking twenty-four (24) or more instruction hours per week in a bona fide training or education program approved under administrative regulations to be promulgated by the commissioner."